## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
UNITED STATES OF AMERICA        )
                               )
            v.                  )
                               )  Crim. Nos. 12-59-17(EGS)
Jonathan Logan                  )             13-248 (EGS)
                               )
        Defendant.              )
                               )
_____)
```

### MEMORANDUM OPINION

In 2013, Jonathan McCoy Logan pleaded guilty to drug and gun related offenses in two criminal cases, and was sentenced to an agreed-upon 147 months of incarceration pursuant to a Rule 11(c)(1)(C) plea. Several months after he was sentenced, the government informed Mr. Logan that a Federal Bureau of Investigation ("FBI") Special Agent who was involved in the execution of the search warrant attendant to his arrest had tampered with evidence in other criminal cases. Mr. Logan now moves to vacate his convictions and sentences under 28 U.S.C. § 2255 based on: (1) the information provided about that FBI agent; and (2) an alleged technical error in his sentencing.

For the reasons that follow, Mr. Logan's motions to vacate his convictions and sentences are **DENIED**.

## I. BACKGROUND

### A. Factual Background

In September of 2010 the FBI began investigating a network of drug trafficking that stretched from Maryland to Washington D.C.[1] *See* Factual Proffer ("Proffer"), ECF No. 461 at 1.[2] As a result of its investigation, which included extensive physical and electronic surveillance, the FBI identified several individuals who would later be indicted on various drug conspiracy charges. *Id.* at 1–2.

One of those indicted individuals was Jonathon McCoy Logan. The investigation revealed that, on several occasions, from at least September 2010 to October 21, 2011, Mr. Logan sold cocaine to another indicted individual, Kelvin Heyward. *Id.* at 2–3. Wire-tapped calls between the two showed that they would coordinate these sales of cocaine at public locations. *Id.* at 3. These calls captured the details of specific drug transactions, as well as how the transactions were generally conducted. *Id.*

The transactions came to an end on October 21, 2011, when Mr. Logan was arrested during a drug deal. *Id.* at 5–6. The deal commenced when Mr. Logan called another customer, Archie Kinney,

---

[1] When citing electronic filings throughout this opinion the Court cites to the ECF header page number, not the page number of the filed document.
[2] Unless otherwise indicated, docket citations in this Memorandum Opinion are to Criminal Action No. 12-59.

to set up a meeting later that day. *Id.* at 5. At approximately 4:25 pm, Mr. Logan pulled into a shopping center parking lot in Capitol Heights, Maryland and Mr. Kinney entered the parking lot shortly after. *Id.* at 6. The two men parked their vehicles adjacent to each other. *Id.* Mr. Logan next entered Mr. Kinney's car and sold him narcotics. *Id.* After the sale, Mr. Logan exited Mr. Kinney's car and began to back out of the parking lot. *Id.* At that point, Prince George's County Police Department officers arrived on the scene and arrested Mr. Logan. *Id.* The officers then searched Mr. Logan as a result of the arrest and uncovered a .32 semi-automatic handgun along with over $14,000. *Id.* The officers next searched Mr. Logan's vehicle finding $4,000 and several plastic bags containing cocaine. *Id.* at 6–7.

Mr. Logan was charged in two separate criminal cases based on: (1) the evidence accumulated during the investigation; and (2) the evidence seized during the October 21, 2011 arrest. The surveillance evidence gave rise to the indictment filed on March 8, 2012, charging Mr. Logan with one Count of Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine and 280 Grams or More of Cocaine Base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(c). *See* Superseding Indictment, ECF No. 12. The October 2011 arrest, and subsequent car search, gave rise to an August 2013 indictment in Maryland, later transferred to this district, which charged Mr.

3

Logan with, among other things, Conspiracy to Distribute and Possession with Intent to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C §§ 846, 841(a)(1) and 841(b)(1)(C); and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c). *See* Criminal Action No. 13-248, Indictment, ECF No. 1-1.[3]

Mr. Logan was arrested at his place of business, the All-In-One Stop in Clinton, Maryland, following the filing of the March 8, 2012 superseding indictment. *See* Arrest Warrant Returned Executed, ECF No. 34. That same day, a team of FBI agents executed a search warrant at the All-In-One Stop; the presence of one agent, Special Agent ("SA") Matthew Lowry, is relevant to Mr. Logan's collateral attack on his plea and sentence.

According to the United States Attorney's Office for the District of Columbia ("USAO-DC"), the investigation that resulted in Mr. Logan's indictment was conducted by the FBI's Safe Streets Task Force. Notice, ECF No. 563 at 1. SA Lowry was assigned to a different task force -- the Cross-Border Task

---

[3] As Mr. Logan points out, not all briefings were filed in both cases. The Section 2255 motion and government's opposition were filed in both cases and are identical. Mr. Logan's Reply was filed only in Criminal Action No. 12-59, and the supplement was filed only in Criminal Action No. 13-248. The government's opposition to the supplement, and Mr. Logan's reply thereto were filed only in Criminal Action No. 13-248.

Force ("CBTF")--but he "provided some assistance to the overall investigation at the time of the 'take-down' in March 2012." *Id.* Specifically, SA Lowry participated in the execution of the search warrant at the All-In-One Stop which led to the seizure of several items.[4] Criminal Action No. 13-248, Gov't. Response to Def. Ltr. to Court, ECF No. 18 at 1-2. According to the USAO-DC, SA Lowry was not listed on the chain-of-custody for any of the items seized from the All-In-One Stop. *Id.* at 2.

On October 1, 2014 the FBI informed USAO-DC that "Special Agent Lowry may have engaged in misconduct by tampering with evidence . . . includ[ing] tampering with narcotics and firearm evidence seized during investigations." Notice, ECF No. 563 at 1-2. USAO-DC soon after informed the Court that a criminal investigation was being conducted into SA Lowry's misconduct. *Id.* USAO-DC explained that it was recused from the FBI investigation, but that it believed that SA Lowry's misconduct would not have an impact on the defendants in the case because "of [SA Lowry's] limited role in the overall investigation." *Id.* at 2.

---

[4] The evidence seized during this search included several bags of marijuana, a digital scale, and a plastic bag with white powder found to consist of quinine hydrochloride by the DEA lab. *See* Criminal Action No. 13-248, Gov't. Response to Def. Ltr. to Court, ECF No. 18 at 1-2. Notably, cocaine was not recovered from the All-In-One Stop.

The FBI's investigation into SA Lowry's misconduct was prompted by the discovery of SA Lowry under the influence of drugs in an FBI vehicle on September 29, 2014. The investigation revealed that SA Lowry began to remove FBI drug evidence in "late 2013." *See* Criminal Action No. 13-248, Mem. Of Investigation, ECF No. 40-1 at 20.[5]  He admitted to "taking a small amount of [narcotics] prior to packaging and processing the evidence" in an unrelated case. *Id.* SA Lowry admitted to using drugs from "late 2013 when he began, through September 29, 2014, when he was found [under the influence] in his FBI-issued vehicle." *Id.* SA Lowry was charged with, among other things, possession of heroin. *See* Criminal Action No. 15-34, Judgment in a Criminal Case ("Judgment"), ECF No. 30. He pleaded guilty to the charges and was sentenced to 36 months of incarceration. *Id.*

## B. Procedural History

On August 29, 2013, over a year before SA Lowry's misconduct came to light, Mr. Logan pleaded guilty before this Court to two drug conspiracy offenses and to one gun-related offense. One of the drug conspiracy offenses was in connection with the narcotics he sold Mr. Heyward for which he was indicted in Criminal Action No. 12-59, and the other was in connection to the drugs recovered from his car during his October arrest which

---

[5] The Memorandum of Investigation is attached as an exhibit to Petitioner's motion. *See* ECF No. 40-1 at 20-25.

led to the indictment in Criminal Action No. 13-248. *See* Proffer, ECF No. 461. The third offense was for using and carrying a firearm during a drug trafficking offense, also in connection to his October arrest. *See* Criminal Action No. 13-248, Proffer, ECF No. 3 at 6. The parties agreed to a 147-month term of incarceration pursuant to an 11(c)(1)(C) plea. *See* Addendum to Plea Agreement, ECF No. 527 at 1. On April 17, 2014, this Court sentenced Mr. Logan to a concurrent sentence of 87 months on the two conspiracy drug offenses, and a consecutive sentence of 60 months for the firearm offense for a total of 147 months consistent with the agreed-upon sentence. *See* Sentencing Hr'g Tr., ECF No. 627 at 35.

In November 2014 the government disclosed to Mr. Logan the information about SA Lowry's alleged wrongdoing. Notice, ECF No. 563 at 1. The Court then directed the government to file status reports regularly with the Court with updates on the status of the government's investigation into Mr. Lowry's alleged misconduct. Minute Order of November 13, 2014. The government explained SA Lowry's role in Mr. Logan's case as follows:

> [G]overnment counsel understands that Agent Lowry's involvement in the investigation . . . involved assisting in a large-scale "takedown" on March 12, 2012, specifically the execution of one search warrant on March 12, 2012, in Clinton, Maryland. Agent Lowry participated along with a team of other FBI agents in executing a search warrant at defendant Jonathan Logan's

> business location. . . . Agent Lowry was not listed on
> the chain-of-custody for any of the items seized from
> this location.

Criminal Action No. 13-248, Gov't. Response to Def. Ltr. to
Court, ECF No. 18 at 1-2. The government also made clear that
the only event in which SA Lowry participated in Mr. Logan's
case--the execution of the search warrant on March 12, 2012--
occurred five months after October 21, 2011, which was the
ending date of the drug conspiracy with which Mr. Logan was
charged. *Id.* Similarly, the proffer of facts explained that the
gun seizure occurred during the October 21, 2011 arrest, several
months before SA Lowry's involvement in the case. *See* Proffer,
ECF No. 461 at 6.

The government maintained this position for the remainder
of the case. During the guilty plea of a co-defendant, Timon
Sandidge, the government reiterated the minimal role that SA
Lowry had in the investigation in this case and reiterated the
fact that it would not use the evidence recovered during the
search of Mr. Logan's place of business at trial. *See* H'rg Tr.,
ECF No. 626 at 6. Mr. Sandidge ultimately pleaded guilty and was
sentenced to a total of 72 months incarceration. *See* Judgment,
ECF No. 595 at 3.

Mr. Logan, *pro se*, filed the pending motions to vacate his
convictions and sentences pursuant to 28 U.S.C. § 2255 arguing
that SA Lowry's misconduct entitled him to relief under the

statute. *See* Pet'r's Mot., ECF No. 613. After the government filed its Opposition, ECF No. 643, Mr. Logan filed a supplemental pleading, this time with the assistance of counsel, making an additional argument that there was a technical error in the calculation of Mr. Logan's sentence, *see* Criminal Action No. 13-248, Pet'r's Suppl. Mot., ECF No. 40 at 3. The government filed an opposition to the supplemental pleading, Criminal Action No. 13-248, ECF No. 44, to which Mr. Logan filed a reply, Criminal Action No. 13-248, ECF No. 45. The motions are now ripe for disposition.

## II. STANDARD OF REVIEW

A prisoner who was sentenced by a federal court may move the sentencing court to vacate, set aside, or correct his sentence if the prisoner believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A Section 2255 motion may be denied when it "offer[s] only bald legal conclusions with no supporting factual allegations*." Mitchell v. United States*, 841 F. Supp. 2d 322, 328 (D.D.C. 2012) (citation omitted). In addition, "conclusory arguments may be summarily dismissed by the Court." *United States v. Geraldo*, 523 F. Supp. 2d 14, 22

(D.D.C. 2007) (citing *United States v. Morrison*, 98 F.3d 619,
626 (D.C. Cir. 1996)).

## III. ANALYSIS

Mr. Logan makes a series of claims based on the role of SA
Lowry in his case. His original petition, filed September 18,
2015, raises four issues which he argues affected his decision
to plead guilty: (1) SA Lowry's alleged admission that he
tampered with evidence during the search of Mr. Logan's business
address; (2) the lack of procedural safeguards to protect the
evidence recovered by the CBTF during his October 2011
arrest;(3) the government's failure to disclose Mr. Lowry's
illegal actions in violation of its *Brady* obligations; and (4)
the DEA test results in connection with the search of his place
of business which allegedly show Mr. Lowry tampered with
evidence during the search. *See* Pet'r's Mot., ECF No. 613. Mr.
Logan supplemented the petition more than two years later, on
February 6, 2018, to add an additional issue based on an alleged
error in the calculation of his sentence. *See* Criminal Action
No. 13-248, Pet'r's Suppl. Mot., ECF No. 40 at 3-5.

### A. Evidentiary Hearing

As a preliminary matter, the Court concludes that no
evidentiary hearing is necessary. An evidentiary hearing on a
habeas matter is not required when "the motion and the files and
records of the case conclusively show that the prisoner is

10

entitled to no relief . . .." 28 U.S.C. § 2255(b). Appellate courts generally respect a district court's decision not to hold a hearing when the judge deciding the motion also presided over the initial trial. *United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005). This is because a complete and uncontroverted evidentiary record, *Machibroda v. United States*, 368 U.S. 487, 494 (1962), coupled with the judge's recollection of the events at issue, enable a summary ruling. *Id.* at 495; *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992). Indeed, only where the Section 2255 motion "raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held." *Pollard*, 959 F.2d at 1031 (quoting *Machibroda*, 368 U.S. at 495).

Having presided over Mr. Logan's guilty plea and sentencing, this Court is intimately familiar with the facts and history of the case. With no material facts in dispute, the parties' briefs and the entire case record conclusively demonstrate both that Mr. Logan is entitled to no relief and that an evidentiary hearing is not warranted. The Court therefore proceeds to the merits of Mr. Logan's claims.

### B. Motion to Reopen Guilty Plea

Although Mr. Logan's *pro se* motion is not entirely clear, his first two grounds for relief--that his guilty plea would

11

have been different if he knew about SA Lowry's misconduct--are properly construed as an attack on the validity of his guilty plea. Once a defendant who pleads guilty has been sentenced, permission to withdraw the plea will be granted only "in those 'extraordinary cases' when the court determines that a manifest injustice would result from allowing the plea to stand." *United States v. Roberts*, 570 F.2d 999, 1008 (D.C. Cir. 1977). Moreover, "[t]o have a plea set aside on a [S]ection 2255 petition, the petitioner must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001) (citations and internal quotation marks omitted).

    With regard to the first ground, Mr. Logan claims that "[u]pon information and belief, Special Agent Lowry admitted to the F.B.I. that he was involved in the theft [or] misuse of drugs seized in a search of [his] business address . . . and [t]he [misconduct] affected both [his] decision[s] to enter pleas of guilty . . . and to accept the sentencing guidelines ranges agreed upon by the parties." Pet'r's Mot., ECF No. 613 at 4. However, Mr. Logan fails to provide any factual support for the claim that SA Lowry admitted to the FBI that he took drugs during the March 2012 search. "Information and belief" without

some basis in fact is insufficient to support Mr. Logan's contention that the misconduct somehow affected his case.

In support of his claim, Mr. Logan repeatedly points to the fact that an indictment in an unrelated criminal case was dismissed because of SA Lowry's involvement in executing a search warrant. *See* Criminal Action No. 13-248, Pet'r's Suppl., ECF No. 40-1 at 2 (citing *United States v. Borges*, 153 F. Supp. 3d 216 (D.D.C. 2015)). In *Borges*, the government moved to dismiss an indictment against several defendants after admitting that SA Lowry was "involved in executing search warrants that yielded the most significant narcotics evidence recovered in connection with [the] case" and that SA Lowry "played a significant role in the execution of search warrants central to the investigation." *Id.* at 218 (internal citations and quotation marks omitted). Because of the importance of SA Lowry's role, and the significance of the evidence recovered during the search, the court dismissed the indictment with prejudice. *See Borges*, 153 F. Supp. 3d at 221.

The circumstances in this case are far different from those at issue in *Borges*. First, the evidence recovered from the March 2012 search was not central to Mr. Logan's case. Mr. Logan's statement of offense makes clear that the conspiracy to which he pleaded guilty ended on October 21, 2011, several months before the search of his place of employment occurred. Proffer, ECF No.

13

461 at 2–3. Critically, Mr. Logan swore under oath these facts were true and was given an opportunity to correct any misstatements or inaccuracies.[6] Second, Mr. Logan fails to point to any evidence indicating that SA Lowry played a significant role in the search or that he tampered with any evidence that was the basis for Mr. Logan's guilty plea. The government's several disclosures in this case state that SA Lowry was not involved in the chain of custody for any evidence seized from Mr. Logan's place of business. Criminal Action No. 13-248, Gov't. Response to Def. Ltr. to Court, ECF No. 18 at 1–2. Indeed, there was no cocaine recovered during that search and Mr. Logan points to nothing in the multiple USAO-DC disclosures to support his claim that SA Lowry in fact admitted to tampering with evidence seized in his case.

Mr. Logan's conclusory statements about SA Lowry's role during the search of his place of business cannot meet the high standard that "the plea proceeding was tainted by a fundamental defect which inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Weaver*, 265 F.3d at 1077 (citations and internal quotation marks omitted). Therefore, Mr. Logan's Section 2255 motion on this ground is **DENIED**.

---

[6] Mr. Logan took that opportunity and corrected one sentence in the proffer. *See* Gov't's Opp'n, ECF No. 643-1 at 24–26.

Mr. Logan's second ground for relief contains similar allegations but relates to the CBTF's involvement in his October 21, 2012 arrest. Mr. Logan alleges, again, "[u]pon information and belief" an FBI investigation into CBTF's practices uncovered the fact that there were "no safeguards for the integrity of the drugs and weapon seized from [Mr. Logan] by the Cross-Border Task Force" and therefore this evidence should not have been entered into evidence or "played a part in the calculation of" Mr. Logan's Sentencing Guidelines calculation. Pet'r's Mot., ECF No. 613 at 5. Like the first ground, this argument fails because Mr. Logan has not provided any factual support for this claim. Because Mr. Logan has failed to support this conclusion with any facts or citation to the record for support, this ground is summarily **DENIED**. *See, e.g.*, *United States v. Morrison*, 98 F.3d 619, 626 (D.C. Cir. 1996) (holding that summary denial of a Section 2255 motion is appropriate when the underlying ground for relief is speculative).[7]

### C. *Brady* Violation

Mr. Logan's third ground for relief is that the "facts surrounding the illegal acts when dealing with the chain of

---

[7] Mr. Logan's fourth ground for relief, that SA Lowry must have tampered with evidence seized at his place of business because the evidence consisted of a plastic bag with white powder found to consist of quinine hydrochloride, Pet'r's Mot., ECF. No. 613 at 11, is based on pure speculation, and therefore is also summarily **DENIED.**

custody of confiscated items by FBI Special Agent Matthew Lowry" is newly discovered evidence that should have been disclosed to him. Pet'r's Mot., ECF. No. 613 at 7. He further argues that at "no time was [he] instructed as to what [SA Lowry] had done in this case at bar." *Id.* And therefore, there was a *Brady* violation in this case. Pet'r's Reply, ECF. No. 655 at 5.

A due process violation arising from the government's knowing suppression of evidence entitles a defendant to relief when "three components" are met: (1) The suppressed evidence is favorable to the accused, either because it is exculpatory, or because it provides impeachment material; (2) the government suppresses the evidence, either willfully or inadvertently; and (3) the defendant was prejudiced by the nondisclosure. *See United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017) "To satisfy the prejudice element, the evidence must be material." *Id.*(citations omitted).

Mr. Logan's *Brady* claim fails because he cannot show that the government either willfully or inadvertently suppressed evidence against him. Mr. Logan is correct that the government has an obligation to disclose material exculpatory and impeachment evidence, and that this obligation extends to law enforcement. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (stating "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the

government's behalf in the case, including the police"). However, the government, including law enforcement, was not aware of SA Lowry's conduct during Mr. Logan's plea or sentencing. The government learned of SA Lowry's conduct on September 29, 2014, five months after Mr. Logan was sentenced, when SA Lowry was discovered in his car. *See* Criminal Action No. 13-248, Mem. Of Investigation, ECF No. 40-1 at 20. USAO-DC, which was recused from the investigation, was informed two days later, on October 1, 2014, and alerted Mr. Logan of the investigation into SA Lowry's conduct on November 13, 2014 in response to this Court's Order. Notice, ECF No. 563 at 1. The record shows that, under these circumstances, the government provided Mr. Logan the information within a reasonable time of receiving notice of the investigation from the FBI (i.e., 44 days), and provided the Court and parties with regular updates about the investigation. *See id.* The record also shows that the USAO-DC provided Mr. Logan with the same information given to the co-defendants in his case.[8] *See, e.g.*, Ltr. to Attorney for Sandidge, ECF No. 643-1 at 40, 47–48.

---

[8] Mr. Logan also argues that he is entitled to relief because Mr. Sandidge received a significantly lesser sentence "as a direct result of the facts surrounding the illegal acts" related to SA Lowry's conduct. Pet'r's Mot., ECF No. 613 at 7. The record shows that both Mr. Logan and Mr. Sandidge were provided with the same information and there is nothing in the record which suggests Mr. Sandidge received any benefit in sentencing because of SA Lowry's actions.

Mr. Logan's claims also fail because he cannot show that the evidence he alleges was suppressed was material to his case. SA Lowry began taking evidence in late 2013, around two years after the October 2011 end date of the conspiracy Mr. Logan swore he participated in during his factual proffer. *See* Criminal Action No. 13-248, Mem. Of Investigation, ECF No. 40-1 at 20. Mr. Logan points to SA Lowry's involvement in the search of his business, but that search is not relevant to any of the charges to which he pleaded guilty since it was conducted several months after the time frame of the drug conspiracy. *See* Proffer, ECF No. 461. Mr. Logan also points to CBTF's involvement in the evidence that was recovered during the October 21, 2011 seizure, which formed the basis for the firearms charge, but, again, he cites no evidence to support his claim that the CBTF tampered with evidence and fails to provide any evidence that SA Lowry was involved in that seizure. *See* Pet'r's Mot., ECF No. 613 at 6 (citing CBTF's destruction of evidence as a basis for relief).

Mr. Logan has failed to show that the evidence he claims entitles him to relief was either material to his case or inadvertently or willfully suppressed by the government. Accordingly, Mr. Logan's Section 2255 motion on this ground is **DENIED**.

### D. **Procedurally Barred Claim**

Mr. Logan's final claim is related to the calculation of his Sentencing Guidelines range, despite the fact his sentence was governed by a plea agreement pursuant to Rule 11(c)(1)(C). *See* Criminal Action No. 13-248, Pet'r's Suppl. Mot., ECF No. 40 at 3-5. He raised this claim on February 6, 2018, over two years after filing his original petition, in a supplement to his Section 2255 petition. *Id.* That supplement states that "the pre-sentence report incorrectly stated Logan . . . was on probation at the time he committed the instant offense . . . giving him an additional 2 points to his criminal history" under the Sentencing Guidelines. *Id.* at 3-4. Therefore, Mr. Logan argues, he is entitled to new concurrent sentences consistent with a Guidelines range of 78-97 months for the conspiracy drug offenses followed by a 60-month consecutive sentence on the gun offense. *Id.* at 5.

Motions to amend a Section 2255 motion are governed by Rule 15 of the Federal Rules of Civil Procedure. S*ee United States v. Hicks*, 283 F.3d 380, 383 (D.C. Cir. 2002) ("Rule 15 prescribes how civil pleadings may be amended and supplemented, and it applies to § 2255 proceedings."). Under the relevant provisions of the statute, a defendant generally must file a Section 2255 motion within a year of "the date on which the facts supporting

the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).[9]

Amendments to Section 2255 motions are time-barred unless they are "subsumed by the timely first motion pursuant to the 'relation-back' doctrine." *Hicks*, 283 F.3d at 387. An amendment is "permitted to relate back only when 'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *See id.* at 388 (quoting Fed. R. Civ. P. 15(c)(2)). In this Circuit, a proposed amendment does not relate back when it "makes claims or is based on occurrences 'totally separate and distinct, in both time and type from those raised in [the] original motion." See *Hicks*, 283 F.3d at 388 (citations omitted).

In his original motion, Mr. Logan argues that he is entitled to relief based on the actions of SA Lowry and the CBTF. *See* Pet'r's Mot., ECF No. 613. His claim of an error in his sentence calculation is therefore based on occurrences "totally separate and distinct, in both time and type" from those raised in his original motion. *See Hicks*, 283 F.3d at 388.

---

[9] The government points out that the one-year time period did not begin to run in this case until November 2014, the date on which the government disclosed the investigation into SA Lowry. Therefore, Mr. Logan timely filed his original petition on September 18, 2015.

Mr. Logan also argues that the Court should equitably toll the one-year deadline but fails to point to any "extraordinary circumstance[s]" which would allow the Court to do so. *See United States v. McDade*, 699 F.3d 499, 506 (D.C. Cir. 2012) (holding deadline was equitably tolled when defendant timely advised counsel he wanted to raise claim four months in advance of deadline and counsel failed to file in time).

The Court notes that even if Mr. Logan had timely filed his supplement it would not be granted. In the case of a Rule 11(c)(1)(C) plea agreement that "includes a specific sentence," the Court may accept the agreement if the Court is satisfied that the agreed upon sentence "is within the applicable guideline range, or the agreed upon sentence departs from the applicable guideline range for justifiable reasons." U.S.S.G. § 6B1.2(c). If the court accepts the agreement, the "recommendation or request binds the court." Fed. R. Crim. P. 11(c)(1)(C). In his plea agreement, Mr. Logan agreed that "a sentence of [147 months] of incarceration . . . is the appropriate sentence for the offenses to which [Mr. Logan]" pleaded guilty. *See* Addendum to Plea Agreement, ECF No. 527 at 1. Even if Mr. Logan is correct that his applicable guideline range should have been 138-157 months, because of a 2-point reduction to his criminal history, the 147 months to which he

agreed was within that range.[10] Because, even under his own calculation, Mr. Logan agreed to a sentence that was within the Guideline range there was no error in accepting the plea agreement which governed the length of his sentence. Accordingly, the Court **DENIES** the supplemental motion.

## IV. CONCLUSION

For foregoing reasons, Mr. Logan's motions to vacate his convictions and sentences pursuant to 28 U.S.C. § 2255 are **DENIED.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
**United States District**
**October 25, 2018**

---

[10] Mr. Logan's argues that his Guidelines range for the drug offenses should have been 78-97 months and does not take issue with the 60-month consecutive sentence he received for the gun-related offense. Thus, Mr. Logan argues that his actual sentencing range should be from 138-157 months.